IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DIANE M. CRUMPLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | No. 08 C 3467 |
| | ) | |
| RICH TOWNSHIP HIGH SCHOOL DISTRICT # 227, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**Introduction**

Diane M. Crumpley filed this lawsuit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 626 *et seq.*, against her former employer Rich Township High School District # 227 ("District 227"). Crumpley alleged she was terminated from her position as a special education teacher at Rich East High School ("Rich East") in March 2007 because of her white race, her female sex, and her age, at the time, of forty-two years.[1] She also alleged that she was terminated in retaliation for speaking out against District 227's conduct in contravention of the No Child Left Behind Act. Before the court now is District 227's motion for summary judgment on all of Crumpley's claims. For the reasons stated below, District 227's motion is granted as to Crumpley's Title VII and ADEA claims and denied as to her retaliation claim.

---

[1]Crumpley's date of birth is May 2, 1964.

**Background**

In ruling on a motion for summary judgment, this court must consider the facts before it in a light most favorable to the non-moving party, drawing all reasonable inferences and resolving all doubts in the non-moving party's favor. *Woodruff v. Mason*, 542 F.3d 545, 550 (7th Cir. 2008). Therefore, in considering District 227's motion, the court will review the facts properly before it and draw all reasonable inferences in Crumpley's favor.

On June 16, 2003, Crumpley joined the Alpha program at Rich East as a probationary reading and language arts teacher. (Pl.'s L.R. 56.1 Resp. to Def.'s Stmt. of Undisputed Facts ¶¶ 6, 9.) The Alpha program was designed to serve the needs of District 227's cognitively or physically disabled students. (*Id*.) As a probationary teacher, Crumpley's contract required renewal every year based on her performance during that year (*id.* ¶ 16), and after four years she would have been eligible for tenure (Crumpley Dep. 135:21-24).

During the 2006 school year, Dr. Jeff Craig, a white male in his mid-forties, served as the principal at Rich East, and Kelly Gould, a white female, was the Special Education Coordinator. (Pl.'s L.R. 56.1 Resp. to Def.'s Stmt. of Undisputed Facts ¶¶ 12-13.) Craig and Gould were responsible for evaluating teacher performance within the Alpha program. (*Id.* ¶ 17.) Teacher evaluations consisted of in-class observations by Craig and Gould followed by performance review conferences. (*Id.* ¶ 21.) According to Crumpley's "teacher performance appraisal," Craig observed Crumpley on October 26, 2006. (*Id.* ¶ 18.) Gould observed Crumpley in class on October 30, 2006 and February 9, 2007. (*Id.* ¶ 20.) Crumpley's performance review conference with Craig took place on October 27, 2006. (*Id.* ¶ 19.) Her conferences with Gould took place on November 1, 2006 and February 21, 2007. (*Id.* ¶ 21.)

Notes from the performance review conferences were memorialized in a "teacher performance appraisal," and at the end of the school year Craig and Gould prepared a "Summative Evaluation" (*id.* ¶ 22), in which they assigned each teacher a rating of "Excellent," "Satisfactory" or "Unsatisfactory" (i*d.* ¶ 24). Ratings were assigned based on the teachers' performance in four roles: "Teaching and Learning," "Communication," "Professional Responsibilities," and "Human Relations." (Pl.'s L.R. 56.1 Resp. to Def.'s Stmt. of Undisputed Facts ¶ 23.) Each role contained "essentials" a teacher must demonstrate to receive a positive rating in that role. (Def.'s L.R. 56.1 Stmt. of Undisputed Material Facts, Ex. 8 ) There was also a section for comments from the review sessions and the Summative Evaluation. (Pl.'s L.R. 56.1 Resp. to Def.'s Stmt. of Undisputed Facts ¶¶ 27-29.)

Craig and Gould prepared Crumpley's Summative Evaluation on March 12, 2007. (Def.'s L.R. 56.1 Stmt. of Undisputed Material Facts ¶ 30.) Crumpley received a score of "Satisfactory" for her "Teaching and Learning" role. (*Id.* ¶ 26.) Crumpley was rated "Unsatisfactory" in the categories of "Communication," "Professional Responsibilities," and "Human Relations." (*Id.*) Crumpley's final rating was "Unsatisfactory." (*Id.*)

Comments from the Summative Evaluation dated March 12, 2007 were as follows concerning "Communication":

> Since November 2006 there have been several incidents which are an areas [sic] of concern. Ms. Crumpley, after discussing an issue with a parent, failed to follow through with agreed upon remediation of stated issue. In addition, Ms. Crumpley has not been keeping parents informed of behavioral issues of their child. This lack of follow through resulted in parent complaints to her supervisors to resolve this issue.

(Def.'s L.R. 56.1 Stmt. of Undisputed Material Facts, Ex. 8 at 3.)

Comments from the Summative Evaluation dated March 12, 2007, regarding Crumpley's "Professional Responsibilities" role were as follows:

> Ms. Crumpley continues to minimize the workday by her lack of punctualtiy [sic]. This has been brought to her attention. Although a particpate [sic] in program meetings, Ms. Crumpley disregards agreed upon courses of action and procedes [sic] to implement her own course of action, without seeking administrative approval

(Def.'s L.R. 56.1 Stmt. of Undisputed Material Facts, Ex. 8 at 4.)

Comments under "Human Relations" from the Summative Evaluation dated March 12, 2007, were as follows:

> Ms. Crumpley fails to develop relationships with colleagues based on mutual respect. She fails to see the necessity of compromise in professional discussions which impairs her ability to work well with others. These issues have divided the program staff and to the detriment of the program

(Def.'s L.R. 56.1 Stmt. of Undisputed Material Facts, Ex. 8 at 5.)

Crumpley's March 12, 2007 Summative Evaluation also contained comments from prior in-class observations regarding her performance in each role. There is no indication of the date or author on the earlier comments; they appear in italics above the March 12, 2007 comments. For "Communication" they read:

> Ms. Crumpley provides positive feedback to her students as well as consistently monitors and responds to maladaptive behavior. She maintains open communication with parents and is involved wit the well-being of her students. She keeps parents informed and abreast of their child's progress. She demonstrates enthusiasm for teaching her subject matter. Ms. Crumpley communicates with her assistants and they work collaboratively.

(Def.'s L.R. 56.1 Stmt. of Undisputed Material Facts, Ex. 8 at 3.) For "Professional Responsibilities":

> Ms. Crumpley continues to exhibit a high interest in being a committed teacher and her concern for the program is evident. She is an active participant in our weekly program meetings. Ms. Crumpley maintains and submits accurate records as required by building and district policy and procedure. Ms. Crumpley adheres to building and district polcies [sic] except for punctuality, she is late for staff meetings and start of day.

(Def.'s L.R. 56.1 Stmt. of Undisputed Material Facts, Ex. 8 at 4.) And for "Human Relations":

4

> Ms. Crumpley displays and [sic] openness towards her students and promotes
> responsibility and independence. She has demonstrated an ability and desire to share
> information and teaching strategies with her colleagues. She collaborates with many
> disciplines to achieve this goal. Ms. Crunpley [sic] and the Speech and Language
> Therapist are presenting a half day workshop on PECS to the ALPHA program staff this
> school year. Ms. Crumpley treats all students fairly and expects students to respect
> others.

(Def.'s L.R. 56.1 Stmt. of Undisputed Material Facts, Ex. 8 at 5.)

Based on the March 12, 2007 comments, Craig assigned Crumpley a rating of "Unsatisfactory" and determined that her contract should not be renewed. (Pl's L.R. 56.1 Resp. to Def.'s Stmt. of Undisputed Facts ¶ 26.)

Crumpley explained in a rebuttal letter to Craig and at her deposition in this case that her failure to compromise with other teachers, which was negatively commented on in relation to her "Human Relations" skills, stemmed from an incident where she believed the Alpha teachers were being pressured to prepare and falsify student portfolios to comply with the No Child Left Behind Act. (Pl.'s L.R. 56.1 Stmt. of Additional Facts ¶¶ 16, 30, 31, 34.) Specifically, Crumpley explained that several times a year, the Alpha teachers compiled samples of their students' work into portfolios to show progress in compliance with the No Child Left Behind Act. (Crumpley Dep. 71:3-21.) Portfolios from the beginning of the school year were compared to those compiled at the end of the school year to verify that the students had been taught specific topics approved by the state and to show student growth. (*Id.* at 71-72.) According to Crumpley, the samples taken from the science class during the February 2007 sample-gathering period did not demonstrate any of the topics approved by the state, so there were no appropriate work samples to include in the student portfolios. (*Id.* at 82:12-15.) Crumpley further explained that, to remedy the lack of appropriate work product, a 24-year-old African-American teacher in the Alpha program suggested that the Alpha program teachers manufacture and sign students'

5

names to "samples" of student work that complied with the approved topics. (*Id.* at 82:16-20.) Specifically, Crumpley said that the teacher asked Crumpley to create data showing that the students had taken care of animals in her classroom. (*Id.*) Crumpley refused, explaining that she wanted no part of it because "[her] name goes on it" and "it would be lying." (Crumpley Dep. 83:23-24.) Further, Crumpley was not comfortable with the other teacher's suggestion because she "ask[ed] adults to create work samples and put students' names on it." (*Id.* at 86:24-87:1.) Crumpley called Gould into the meeting, and eventually Craig became involved as well. (*Id.* at 89-91.)

According to Crumpley, because she objected to the other teacher's suggestion that she manufacture student work product, the teacher who suggested manufacturing student work product became hostile toward her, and a rumor circulated that the other teacher planned to attack Crumpley. (Pl.'s L.R. 56.1 Stmt. of Additional Facts ¶ 29; Crumpley Dep. 56.) Crumpley said that the rumor, which she was not aware of at the time, resulted in a meeting between Crumpley, the other teacher, Craig, and a union representative, during which Craig told Crumpley and the other teacher that the situation would be commented on in their final evaluations. (Crumpley Dep. 55:8-13, 60:22-23.) The other teacher, Crumpley said, later told Crumpley that no mention of the threat or the portfolio incident appeared in that teacher's evaluation. (*Id.* at 154:17-24.)

On June 17, 2008, Crumpley filed this lawsuit against District 227 after her contract was not renewed, alleging that she had been terminated because of her white race, her female sex, and her age, at the time, of forty-two years, as part of a district policy to retain minority teachers. Crumpley also alleged that the Summative Evaluations dated March 12, 2007 were "phony"

6

(Dkt. No. 1 ¶ 7) and created in retaliation against her for protesting the alleged falsification of the student portfolios.

**Analysis**

In its motion, District 227 argues that Crumpley cannot establish essential elements of her claims and therefore summary judgment is appropriate. A grant of summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The movant bears the initial responsibility of informing the court of the basis for its motion and identifying the evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986); *Woodruff*, 542 F.3d at 550 n.8. A fact is material when, under the relevant legal standard, its existence or nonexistence could impact the ultimate disposition of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once a properly supported motion for summary judgment is made, the nonmoving party cannot rest on its pleadings, but must affirmatively demonstrate by specific factual evidence that there is a genuine issue of material fact requiring trial. *Celotex Corp.*, 477 U.S. at 324; *Keri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006). The nonmovant must rely on "competent evidence of a type otherwise admissible at trial." *Lewis v. City of Chi.*, 496 F.3d 645, 651 (7th Cir. 2007). Conclusory allegations, "if not supported by the record, will not preclude summary judgment." *Keri*, 458 F.3d at 628 (citing *Haywood v. N. Am. Van Lines, Inc.*, 121 F.3d 1066, 1071 (7th Cir. 1997)). The failure to prove an essential element of the nonmoving party's case renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23.

## I. Discrimination Under Title VII and the ADEA

District 227 contends that Crumpley possesses no direct evidence that her employment was terminated because of her white race, her female sex, or her age, so she must attempt to prove discrimination through the indirect method established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Applying the framework for the indirect method, District 227 argues that summary judgment is appropriate because, among other things, Crumpley has no evidence that a similarly situated employee outside of her protected classes was treated more favorably.

Title VII makes it unlawful to "discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e. Similarly, under the ADEA, it is unlawful for an employer to "discharge an individual . . . because of such a person's age." 29 U.S.C. § 626(a)(1). The similarities in the language of Title VII and the ADEA has led to the application of the same analytical framework to claims brought under both statutes. *Cerruti v. BASF Corp.,* 349 F.3d 1055, 1060 n.4 (7th Cir. 2003).

Claims under both statutes can be proved through either the direct or indirect method. *Id.* The direct method involves direct or circumstantial evidence that proves discriminatory conduct without reliance on inference or presumption. *Id.* at 1061. The indirect method involves the burden-shifting proof structure originally created for Title VII claims in *McDonnell Douglas* and adopted by the ADEA. *Oxman v. WLS-TV*, 846 F.2d 448, 452 (7th Cir. 1988). Crumpley has not specified under which method she is proceeding, so the court will address the facts under both methods.

In termination cases, the direct method requires that the plaintiff produce evidence that the employer admitted the termination was because of a prohibited animus. *Cerruti,* 349 F.3d at

8

1061 (citing *Rogers v. City of Chi.*, 320 F.3d 748, 753 (7th Cir. 2003)). Direct evidence of discrimination within the direct method must not only highlight discriminatory intent but connect that intent to the termination of the employee. *Cowan v. Glenbrook Sec. Serv. Inc.*, 123 F.3d 438, 443 (7th Cir. 1997) (citing *Randle v. LaSalle Telecomm., Inc.*, 876 F.2d 563, 569 (7th Cir. 1989)). For example, the statement "I fired you because of your age," is direct evidence sufficient to survive summary judgment under this method. *Robin,* 200 F.3d at 1088. A plaintiff may also, within the direct method, attempt to prove intentional discrimination through a "'convincing mosaic' of circumstantial evidence." *Rogers*, 320 F.3d at 753. Circumstantial evidence may include evidence of:

> suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group; evidence that employees who were similarly situated to the plaintiff but who were not members of the protected class systematically received better treatment; or evidence that the plaintiff was qualified for a job but was replaced by someone outside the protected class.

*Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994).

Crumpley has provided no evidence sufficient under the direct method to show discrimination in violation of the ADEA or Title VII, so she must proceed under the indirect method. The indirect method is a three-step, burden-shifting inquiry. *McDonnell Douglas Corp.,* 411 U.S. at 802; *Brummett v. Sinclair Broad. Group, Inc.* 414 F.3d 686, 692 (7th Cir. 2005). To establish a prima facie case under the indirect method plaintiff must show that she was 1) a member of a statutorily protected class; 2) meeting the employer's expectations; 3) suffered an adverse employment action; and 4) point to a similarly situated employee outside of the protected class who was treated more favorably by the employer. *Brewer vs. Bd. of Trustees of Univ. of Ill.*, 479 F.3d 908, 915 (7th Cir. 2007). If the plaintiff establishes a prima facie case, the burden shifts to the employer to provide a "legitimate, non discriminatory reason"

for its action. *Raymond v. Ameritech Corp.,* 442. F.3d 600, 610 (7th Cir. 2006). If the employer satisfies its burden, the burden shifts back to the employee to show that the employer's proffered "legitimate non-discriminatory reason" for termination is pretextual. *Id.*

Crumpley cannot establish a prima facie case under the indirect method because she has not produced any evidence that a similarly situated employee outside of her protected classes was treated more favorably. A similarly situated employee is one that is the same in all material ways, besides the unlawful discriminatory factor. *Keri,* 458 F.3d at 645. To satisfy this element of the prima facie case, a plaintiff must demonstrate that another employee was similarly situated with respect to "performance, qualifications and conduct," and that "the relevant aspects of [their] employment situation were nearly identical to [the] alleged comparator[s]." *Id.* Here, Crumpley has provided no evidence that an employee outside of her protected classes was similarly situated in "performance, qualifications and conduct," or treated more favorably. Specifically, Crumpley identified the 24 year-old African-American teacher from the Alpha program as similarly situated. Although this teacher is outside of Crumpley's protected age and race classes, she was not similarly situated to Crumpley. In particular, the African-American teacher was a probationary teacher in her first year of teaching at Rich East, while Crumpley was a candidate for tenure. *See Keri*, 458 F.3d 620, 626 (7th Cir. 2006) (explaining that employees are not similarly situated if not subject to same promotion tract). Crumpley also testified at her deposition that the other teacher was in a "self-contained piece of the [Alpha] program" and therefore had different responsibilities from Crumpley. (Crumpley Dep. 76:5-20.) Moreover, Crumpley produced no evidence that the other teacher was treated more favorably than Crumpley. Specifically, the only "evidence" showing that the other teacher may have been treated more favorably than Crumpley is Crumpley's deposition testimony that the other teacher

told Crumpley that she had received positive evaluations. Crumpley's testimony on this issue, however, is not sufficient to defeat summary judgment as it is hearsay. *Lewis*, 496 F.3d at 651 (explaining that evidence offered to defend against summary judgment must be admissible at trial). Likewise, Crumpley failed to produce admissible evidence that a male teaching assistant she identified as similarly situated was comparable in "performance, qualifications and conduct" or received a more favorable review.

## II. Retaliation

District 227 argues that the undisputed material facts viewed in favor of Crumpley cannot establish a claim for retaliation because Crumpley cannot show she engaged in a statutorily protected activity under Title VII. District 227 is correct. Crumpley, however, has consistently asserted that she was retaliated against for refusing to falsify student portfolios to bring them into compliance with the No Child Left Behind Act of 2001. As such Crumpley's conduct is protected by the First Amendment, and the proper inquiry is whether District 227 unlawfully retaliated against Crumpley in violation of her First Amendment rights. *See Hall v. Nalco Co.* 534 F.3d 644, 649 n.3 (7th Cir. 2008) (explaining that complaint need not specify legal theory on which claim rests; summary judgment is inappropriate where claim may be cognizable).

A First Amendment retaliation claim proceeds through a three-step analysis. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977); *Spiegla v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004). First, the court must determine whether the speech is constitutionally protected. *Spiegla*, 371 F.3d at 935. Second, the plaintiff must demonstrate that the speech was a substantial and motivating factor in the retaliatory action. *Id.* Third, if plaintiff satisfies her burden, the defendant is given an opportunity to establish that it would have taken the same action in absence of the employee's protected speech. *Id.*

Speech is constitutionally protected if it is a matter of public concern. *Id.* (citing *Connick v. Myers*, 461 U.S. 138, 147-48 (1983)). To determine if speech is a matter of public concern the court must look at the "content, form and context of the statement." *Id.* Content is the most important of these factors. *Gustafson v. Jones,* 290 F.3d 895, 907 (7th Cir. 2002). Speech content is a matter of public concern if it can fairly be said to relate to a matter of political, social, or other concern to the community. *Id*. Speech that is tangentially related to a public interest, but mostly concerning an employee's personal grievance, is not a matter of public concern. *Spiegla,* 371 F.3d at 935.

In this case, this court holds that Crumpley's objection to the falsification of student portfolios on the ground that "[Crumpley's] name goes on that portfolio and that's lying" (Crumpley Dep. 83:24), is a matter of public concern. Crumpley testified that she objected to the manufacture of student work product because it would require "adults to create work samples and put students' names on it." (Crumpley Dep. 86:24-87:1.) Crumpley also brought to her supervisors' attention what she believed were violations of the No Child Left Behind Act and alerted supervisors to her co-worker's suggestion that teachers manufacture student work product. (*Id.*) Crumpley's statements and actions, though indicative of some personal stake in her objections, show that she was motivated to speak out in an attempt to stop the falsification of student work product. Consequently, Crumpley's speech was not of a purely personal nature but of a community concern. *Gustafson,* 290 F.3d at 908 (explaining that personal motive vitiates a statement from public concern if the statement concerns only the individual effect on the employee or is used purely to further some personal interest). Crumpley's speech therefore is protected by the First Amendment.

In addition, Crumpley produced evidence in response to District 227's motion for summary judgment showing that a material issue of dispute fact exists as to whether Crumpley's objection was a motivating factor in the termination of her employment. For example, a jury could infer from the nature of the comments contained in Crumpley's March 12, 2007 performance review, *e.g.,* "she fails to see the necessity of compromise in professional discussions" (Def.'s L.R. 56.1 Stmt. of Undisputed Material Facts, Ex. 8 at 5), that Crumpley's performance was rated "Unsatisfactory" because of the stance she took in opposition to the suggestion that teachers falsify student portfolios. In addition, when considered along with the comments contained in her performance review, a jury could infer from the timing of Crumpley's objections in relation to the poor evaluation and her ultimate termination, that Crumpley's objections were a substantial or motivating factor in District 227's decision to not renew her contract. Consequently, summary judgment is denied on Crumpley's retaliation claim.

## **Conclusion**

For the foregoing reasons, the court grants summary judgment in favor of District 227 on Crumpley's discrimination claims under Title VII and the ADEA. However, District 227's motion for summary judgment is denied as to Crumpley's retaliation claim. The dates previously set remain in effect. The parties are strongly encouraged to discuss settlement.

ENTERED:

*James F. Holderman*
James F. Holderman
Chief Judge

Dated: July 13, 2009